IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.

KELLI RUGGIERE and TODD RUGGIERE, on behalf of themselves and those similarly situated

    Plaintiffs,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

## COMPLAINT

## NATURE OF SUIT

1. The Plaintiffs, Kelli Ruggiere ("Ms. Ruggiere" or "Kelli"), and Todd Ruggiere ("Mr. Ruggiere" or "Todd"), collectively ("Plaintiffs"), former employees of Defendant United Parcel Service, Inc. ("UPS" or "Defendant"), are two of many former and current employees of Defendant, who participated in Defendant's referral program under which Defendant promised bonus wage payments to any employee who successfully referred an individual to work for UPS.

2. Despite Plaintiffs' and others' enthusiastic participation in the Referral Program and their eagerness to help Defendant find employees to cover its important work during the busy holiday delivery season, Defendant did not fulfill its obligation to Plaintiffs and other similarly situated employees to pay them wages earned under the terms of the Referral Program.

3. Accordingly, Plaintiffs bring this individual and class action on behalf of themselves and all other similarly situated UPS employees and/or former employees, pursuant to the Massachusetts Wage Act M.G.L.C. Ch. 149, Se. 148, *et seq.*, and state common law, as their Individual and Class Action Complaint against the Defendant, United Parcel Service, Inc.

## PARTIES

4. Plaintiff Kelli Ruggiere is a resident of the Commonwealth of Massachusetts and worked as an employee of Defendant between approximately September 15, 2022, until approximately January 15, 2023.

5. Plaintiff Todd Ruggiere is a resident of the Commonwealth of Massachusetts and was employed by Defendant from approximately August 2015 up until approximately January 15, 2022.

6. At all times relevant to this complaint, Plaintiffs performed all services and work for the Defendant in the Commonwealth of Massachusetts.

7. The Defendant is an Ohio corporation, with its principal place of business in the state of Georgia.

8. At all times relevant to this complaint, Defendant was registered with the Massachusetts Secretary of State to do business in Massachusetts and in fact has conducted business in Massachusetts. The Defendant's registered agent is Corporation Service Company located at 84 State Street, Boston, MA 02109.

## JURISDICTION AND VENUE

9. This Court has diversity-based jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), as Plaintiffs and Defendant are residents of differing states and the amount in controversy exceeds $75,000.

10. Venue is proper in this Court under 28 U.S.C. §1391(b), because a substantial amount of the events giving rise to the claims in this action took place within this District.

## STATEMENT OF FACTS

11. Defendant operates delivery centers and shipping depots in the state of Massachusetts, employing thousands of hourly employees in Massachusetts that are part of its widespread package and parcel delivery network that serves all regions of the United States and several countries around the world.

12. On or around October of 2021, Defendant hired Mr. Ruggiere as a delivery driver to perform package delivery services in the Boston, MA metropolitan area.

13. On or around September 15, 2022, Defendant hired Ms. Ruggiere as a package handler at Defendant's company to perform package loading services at one of Defendant's depots in Norwood, MA.

14. Beginning in approximately November of 2021, Defendant began an incentive-based employee referral program in an effort to recruit drivers and warehouse employees during its peak season (approximately November - January), which it advertised to its employees via various means, including but not limited to email solicitations, manager briefings and written postings in its places of employment, including delivery centers and warehouses.

15. Under the terms of the above-described employee referral program ("Referral Program"), beginning in approximately October of 2021, Defendant offered then-current Massachusetts-based UPS employees a $250 - $500 incentive payment (with the amount depending on location and position of placement) for each individual whom they successfully recruited to work for UPS during the peak season as a driver, personal driver, package handler, or warehouse employee.

16. During the peak seasons of 2022 and 2023, 2 UPS continued the Referral Program and advertised the Referral Program at its various locations of operation throughout Massachusetts during the peak seasons of each of those years. The incentive payment promised by UPS for successful recruitments differed by year and location, but the referral program remained in existence and all other material terms of the offer remained the same as well.

17. On approximately November 1, 2022, Defendant increased its referral incentive offer to $1,000 for each successful referral made by Massachusetts-based UPS employees.

18. Despite offering these non-discretionary wage payments to all employees who successfully recruited drivers, personal drivers and warehouse employees to work for UPS during the peak seasons in 2021, 2022, and 2023, Defendant failed to make full payment of the incentive payments to Plaintiffs and several other similarly situated employees for all of the successful employee referrals they made to UPS.

## Facts Relating to Plaintiff Todd Ruggiere

19. In approximately August of 2015, Defendant hired Plaintiff Todd Ruggiere to perform package delivery services for its company in the Boston, MA metropolitan area.

20. On or around October 2021, Defendant formally began a referral program in which UPS employees who successfully referred an individual to work as a driver, personal driver, warehouse employee, or package handler would receive a bonus wage payment for each individual successfully referred.

21. At that time, the bonus payment guaranteed to each referring employee differed as to the position the referred employee applied for and the work location of the prospective employee, but ranged from $250-$1,000.

3

22. Mr. Ruggiere continued to work for Defendant as a driver until approximately January 15, 2022, and actively participated in the Referral Program relying on UPS's promise to pay him for his successful referrals until the end date of his employment.

23. During the course of his employment for Defendant, Mr. Ruggiere was successful in referring approximately 1,400 individuals to apply for jobs with UPS.

24. Despite referring approximately 1,400 individuals to apply for jobs at UPS, Mr. Ruggiere received compensation for a fraction of his referrals, receiving approximately $45,500 in wages from the Referral Program, or approximately $32.50 per referral.

25. Defendant failed to provide Mr. Ruggiere with a written statement of how many individuals referred by Mr. Ruggiere they accepted for employment at UPS. Nor did Defendant provide Mr. Ruggiere with a written statement of the amount he received in compensation for each successful referral.

26. Due to the overwhelming number of individuals Mr. Ruggiere successfully referred to UPS and the minimal bonus payments he received, it became apparent to Mr. Ruggiere that he had not been compensated for all successful referrals he made to UPS.

27. After his employment concluded with UPS, Mr. Ruggiere became aware of many other UPS employees who had not been compensated in full for all of the referrals he made to UPS under its Referral Program.

## **Facts Relating to Plaintiff Kelli Ruggiere**

28. On approximately September 13, 2022, Defendant hired Plaintiff Kelli Ruggiere to work as a package handler on a seasonal basis at its loading facility in Norwood, MA.

29. At that time, Defendant's referral program was already ongoing, and under its then-current terms, UPS employees who successfully referred an individual to work for UPS as a driver, personal driver, warehouse employee, or package handler were promised an additional $250 or $500 payment (depending upon the position and location of placement) in wages.

30. On November 1, 2022, Ms. Ruggiere, along with other UPS employees received notice that Defendant was increasing its bonus payment made to its employees who successfully referred an individual to work for UPS to $1,000 for each successful referral.

31. Ms. Ruggiere continued to work as a package handler for Defendant at its Norwood, MA loading facility up until approximately January 15, 2023. During this time, Ms. Ruggiere participated in the Referral Program and was successful in referring individuals to work for UPS who were able to augment Defendant's staffing levels during the holiday season.

4

32. During the course of her employment for Defendant, Ms. Ruggiere was successful in referring approximately 7,402 individuals to apply for jobs at UPS, relying on UPS's promise to pay her for her successful referrals.

33. Despite referring approximately 7,402 individuals to work for UPS, Kelly was only paid for a fraction of her successful referrals, receiving in total $197,000 in referral bonus payments, representing approximately $41.90 per individual referred, far short of the $500 or $1,000 per successful referral promised by Defendant.

34. Defendant failed to provide Ms. Ruggiere with a statement of how many individuals referred by Ms. Ruggiere they accepted for employment at UPS. Nor did Defendant provide Ms. Ruggiere with a statement of the amount she received in compensation for each successful referral.

35. Due to the overwhelming number of individuals Ms. Ruggiere successfully referred to UPS and the minimal bonus payments she received, it became apparent to MS. Ruggiere that she had not been compensated for all successful referrals she made to UPS.

36. During the course of her employment for Defendant, and afterwards, Ms. Ruggiere became aware of several other UPS employees who successfully referred persons to work at UPS, but were not compensated with the full amount of the promised bonus under the Referral Program.

37. The incentive payments promised under the Referral Program functioned as non-discretionary bonuses, and thus wages, under Massachusetts law.

38. As a result, the Defendant failed to pay Plaintiffs and the putative class members all agreed-upon wages under the Massachusetts Wage Act, MGLC Ch. 149, Se. 148 *et seq.*

39. Defendant has been aware that it was required to make such payments for all wages earned, including non-discretionary bonuses and yet it failed to do so for bonus payments made through the Referral Program.

40. In addition, Defendant was aware that pursuant to MGCL, Chapter 149, Section 148, that it was required to provide Plaintiff and the Class Members with paystubs detailing the units of work they completed and the amount received for each unit of work.

41. On information and belief Defendant's pay policy described above was uniform with respect to all classes of Massachusetts hourly employees who participated in the referral program in the state of Massachusetts.

42. Plaintiffs bring this action on their own behalf and on behalf of all such UPS workers in Massachusetts who made successful recruitments to UPS as part of the referral program and did not receive full payment for all the successful referrals they completed.

43. Additionally, because Plaintiffs and the Class Members' entitlement to their compensation as described herein is, in part, dependent upon the determination of the number of referred individuals who were subsequently hired by UPS, Plaintiffs and the Class Members are prevented from being able to allege precisely the amount of wages owed to them and wrongly refused to be paid to them by Defendant , and therefore among other remedies set out herein they seek from the Court an accounting, at the expense of Defendant, to calculate the exact amount of the damages owed to Plaintiffs and the Class Members.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

44. Plaintiff Kelli Ruggiere filed a complaint with the Fair Labor Division of the Massachusetts Attorney General's Office on March 7, 2025 claiming that Defendant did not fulfill its obligation to Plaintiffs and other similarly situated employees to pay them wages earned under the terms of the Referral Program.

45. Plaintiff Todd Ruggiere filed a complaint with the Fair Labor Division of the Massachusetts Attorney General's Office on March 7, 2025 claiming that Defendant did not fulfill its obligation to Plaintiffs and other similarly situated employees to pay them wages earned under the terms of the Referral Program.

### CLASS ALLEGATIONS

46. Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

47. In addition to bringing their claims individually, Plaintiffs also, pursuant to F.R.C.P. 23 , respectively. bring this case as a class action on behalf of a group of two classes of similarly situated workers, The Wage Act Class and the Contract Class.

#### Allegations Regarding the Wage Act Class

48. Plaintiff Kelli Ruggiere hereby brings this class action on behalf of the Wage Act Class.

49. The Wage Act Class is defined as follows:

> All classes of employees who worked for UPS throughout Massachusetts who participated in the Referral Program and made

6

  successful recruitments under the Referral Program and were not compensated in whole or in part for all successful recruitments they completed, dating back three years from the date of filing.

50. The Wage Act Class satisfies the prerequisites and requirements of F.R.C.P. 23 because:

    a. The Wage Act Class consists of at least a hundred employees, and individual joinder of all such employees is impracticable but easily determinable through the employment records of the Defendant;

    b. There are questions of law and fact that are common to the Wage Act Class, which questions predominate over issues affecting only individual Wage Act Class Members, including:

        i. Whether UPS's policies or practices violated the Massachusetts Wage Act;

        ii. The nature of the damages due to Class Members for UPS's violations of the Massachusetts Wage Act ; and

        iii. Whether UPS's violations of the Massachusetts Wage Act were willful.

    c. Plaintiff Kelli's claims are typical of the Wage Act Class Members' claims in that, like all other members of the purported class, and for the same reasons, she was not paid all of her agreed-upon wages during weeks she completed successful recruitments under the Referral Program.

    d. Plaintiff Kelli will fairly and adequately protect the interests of the Wage Act Class. She has retained counsel that is experienced in wage and hour class litigation. Plaintiff Kelli and her counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Wage Act Class.

51. The prosecution of this case as a class action is superior to other methods of adjudication, as the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for UPS and potentially conflicting results for up to thousands of individual workers in matters involving relatively small individual amounts of damages.

52. Adjudications with respect to individual class members would as a practical matter be dispositive to the interests of the other class members or substantially impair or impede their ability to protect their interests.

53. Moreover, UPS has acted on grounds generally applicable to the Wage Act Class.

54. On information and belief, no Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

55. Because of the uniformity of claims alleged in this Complaint and the fact that the Wage Act Class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all Wage Act class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

## Allegations Regarding the Contract Class

56. Plaintiffs Kelli Ruggiere and Todd Ruggiere hereby bring a class action on behalf of the Contract Class.

57. The Contract Class is defined as follows:

> All classes of employees who worked for UPS throughout Massachusetts who participated in the Referral Program and made successful recruitments under the Referral Program and were not compensated in whole or in part for all successful recruitments they completed, dating back six years from the date of filing of this Complaint.

58. The Contract Class satisfies the prerequisites and requirements of F.R.C.P. 23 because:

    a. The Contract Class consists of at least a hundred employees, and individual joinder of all such employees is impracticable but easily determinable through the employment records of the Defendant;

    b. There are questions of law and fact that are common to the Contract Class, which questions predominate over issues affecting only individual Class Members, including:

        i. Whether UPS had a policy or practice of failing to fulfill its contractual obligations to employees to compensate them for all successful recruitments made under the Referral Program;

        ii. Whether UPS breached its contracts with the Contract Class members by not paying the Class members the promised bonus for all successful recruitments they completed;

      iii. The nature of the damages due to Plaintiffs and the Contract Class Members for UPS's breach of its contracts with Plaintiffs and the Contract Class Members;

      iv. Whether UPS was unjustly enriched by receiving increases to its labor force, without having to fully compensate Plaintiffs and the Class Members for their recruitment efforts;

  c. The Plaintiffs' claims are typical of the Contract Class Members' claims in that, like all other members of the purported class, and for the same reasons, they were not paid their agreed-upon wages during weeks they completed successful recruitments under the Referral Program.

  d. Plaintiffs will fairly and adequately protect the interests of the Contract Class. They have retained counsel that is experienced in employment-related class action litigation. Plaintiffs and their counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Contract Class.

59. The prosecution of this case as a class action is superior to other methods of adjudication, as the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for UPS and potentially conflicting results for up to thousands of individual workers in matters involving relatively small individual amounts of damages.

60. Adjudications with respect to individual Contract Class Members would as a practical matter be dispositive to the interests of the other Contract Class Members or substantially impair or impede their ability to protect their interests.

61. Moreover, UPS has acted on grounds generally applicable to the Contract Class.

62. On information and belief, no Contract Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

63. Because of the uniformity of claims alleged in this Complaint and the fact that the class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

## COUNT I:

**FAILURE TO PAY WAGES AT THE AGREED-UPON RATE**
**Massachusetts General Law, Chapter 149, § 148** *et seq.*
**On Behalf of Plaintiff Kelli and all Wage Act Class Members**

64. Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

65. At all times relevant to this Complaint, Defendant was an "employer" of Plaintiff Kelli Ruggiere and the Wage Act Class Members within the meaning of the Massachusetts Wage Act, MGCL, Ch. 149, Section 148.

66. At all times relevant to this Complaint, Plaintiff Kelli Ruggiere and the Wage Act Class Members were "employees" of Defendant UPS within the meaning of MGCL, Chapter 149, Section 148.

67. Pursuant to MGCL, Chapter 149, Sec. 148, an employer is obligated to pay every employee all wages he or she earns, at the agreed-upon rate, within six days of the termination of the pay period in which such wages were earned by the employee.

68. Defendant was obligated to pay Plaintiff Kelli and the Wage Act Class Members all sums earned as a result of successful referrals they made pursuant to the Referral Program, at the agreed-upon rate of compensation, within six (6) days of the termination of the pay period in which Plaintiff Kelli and the Wage Act Class Members completed a successful referral.

69. The non-discretionary bonus payments offered to Plaintiff Kelli and the Wage Act Class Members qualified as "wages" within the meaning of Massachusetts law.

70. Defendant has failed to make full payment of all non-discretionary bonuses earned by Plaintiff Kelli and the Wage Act Class Members under the Referral Program, for the successful referrals Plaintiff Kelli and the Class Members made during the three years preceding the filing of this Complaint.

71. Pursuant to MGCL, Chapter 149, Sec. 150, Plaintiff and the Class Members are owed their unpaid wages, liquidated damages in an amount equal to three times their unpaid wages, and the reasonable costs and attorney's fees of this litigation.

## COUNT II:

### BREACH OF CONTRACT
### On Behalf of Plaintiffs and all Contract Class Members

72. Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

73. Beginning in approximately October of 2021, the Defendant offered to Plaintiffs and the Contract Class Members a fixed sum bonus wage payment for each individual they referred to UPS to work during its peak season as a driver, personal driver, package handler, or warehouse employee.

74. As a part of this offer, Defendant agreed to pay Plaintiffs and the Contract Class Members a fixed sum wage payment upon the employment of the referred individual with UPS.

75. Defendant continued the above-described Referral Program by offering fixed sum wage payments to plaintiffs and the Contract Class members for all referrals of individuals who applied to work as drivers, personal drivers, package handlers and/or warehouse employees during the time period between approximately October 2021 and January 2024.

76. Plaintiffs and the Contract Class Members accepted Defendant's contract offer by referring individuals to apply for jobs as drivers, personal drivers, package handlers, and/or warehouse employees during the peak seasons for UPS in 2021, 2022, and 2023.

77. Defendant breached its contracts with Plaintiffs and the Contract Class Members by failing to make full payment on all successful recruitments made to UPS by Plaintiffs and the Contract Class Members during the peak seasons for 2021, 2022, and 2023.

78. As a result of Defendant's breach of its contracts, Plaintiff and the Contract Class Members suffered damages in the form of lost wages.

79. Defendant's breach of its contracts with Plaintiff and the Contract Class members entitles Plaintiff and the Contract Class Members to the award of actual and consequential damages.

## COUNT II:

### UNJUST ENRICHMENT
### On Behalf of Plaintiffs and all Contract Class Members

80. Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

81. Beginning sometime in 2021 or previous thereto, Defendant established its Referral Program by which it agreed to pay its employees who successfully recruited an individual to work at UPS as a driver, personal driver, package handler, or warehouse employee at specified times during the time period between approximately September 2021 until approximately January 2023,

82. Plaintiffs and the Contract Class Members provided a valuable benefit to the Defendant, by recruiting individuals to work for and perform services for UPS during its peak holiday seasons, as well as at other time periods.

83. Defendant was made aware of the benefit conferred to it, by receiving the names of the individual referred for employment by Plaintiffs and the Class members and its consequent hiring of the referred employees.

84. Defendant received a benefit from the recruitment activities and work of Plaintiffs and the Contract Class members in the form of supplementation of its workforce and increased production and revenue during its peak seasons and other time periods.

85. As Defendant solicited and encouraged Plaintiffs and the Contract Class Members to perform extra work on behalf of UPS in the form of engaging in recruitment activities for UPS, it would be unjust and inequitable for Defendant to retain the value of the benefits that it received from Plaintiffs' and the Contract Class Members' additional work, without providing extra compensation to Plaintiffs and the Contract Class members.

86. Accordingly, Plaintiffs and the Contract Class Members are entitled to an equitable award from the Court an amount equal to the value of the additional work they performed on behalf of UPS in recruiting individuals under the Referral Program.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Wage Act and Contract Class Members, respectfully ask that the Court enter judgment against the Defendant: and Order:

A. Appointment of Lichten & Liss-Riordan, P.C. and the Wilhite and Miller Law Firm as class counsel for the Wage Act and Contract Class Plaintiffs;

B. A permanent injunction prohibiting the Defendant from continuing any illegal wage and hour policies and practices of failing to pay proper compensation for all work performed by Plaintiffs and the Wage Act Class Members;

C. An Order requiring Defendant to provide an accounting subject to the Court's review and approval of the referrals made which are the subject of this lawsuit, along with a description of the jobs acquired under the terms of any referrals, the amount paid or not paid to the Plaintiffs and the Wage Act and Contract Class Members, the identity and last known contact information for those referred.

D. An award of back wages reflecting the unpaid compensation due to Plaintiffs and the Wage Act Class Members;

E. The issuance of a declaration and finding that Defendant's conduct in failing to pay the proper wages owed to Plaintiffs and the Wage Act Class Members was willful;

F. An award of all applicable statutory damages and penalties provided under the Mass. Gen. Law, Chapter 151, Section 1B;

G. The issuance of a finding that Defendant breached its contracts with Plaintiffs and the Contract Class members by failing to pay them bonus payments for all successful recruitments they completed under the referral program;

H. An award of actual and consequential damages to Plaintiffs and the Contract Class Members for Defendant's breach of its contracts with Plaintiffs and the Contract Class Members;

I. An equitable award in an amount equal to the value of the additional; work performed by Plaintiffs and the Contract Class Members

J. A service payment to Plaintiffs for their services to the Wage Act and Contract Class Members;

K. An award of reasonable attorneys fees incurred in bringing this action;

L. An award of the costs of this action;

M. An award of pre- and post-judgment interest;

N. Defendant to pay the costs of administering any and all payments awarded to the Class Members by the Court; and

O. Any other and further relief that may be equitable and just.

Respectfully submitted,

*/s/ Harold Lichten*
Harold Lichten
Dated: April 3, 2025
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
T: (617) 994-5800
hlichten@llrlaw.com


Trent R. Taylor (pro hac Vice pending)
David H. Miller (pro hac vice pending)
**Wilhite & Miller Law Firm**
1600 N. Ogden Street
Denver, Colorado 80218
303-551-7663
ttaylor@wilhitelawfirm.com
dhmiller@wilhitelawfirm.com

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*