**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ) | |
| KELLI RUGGERE and TODD RUGGERE, ) | |
| on behalf of themselves and those similarly ) | |
| situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:25-cv-10811-JEK |
| v. ) | |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**KOBICK, J.**

Plaintiffs Todd and Kelli Ruggere (together, the "Ruggeres")[1] bring this putative class action lawsuit alleging that their former employer, defendant United Parcel Service, Inc. ("UPS"), withheld payments that they had earned through its employee referral program. Established in November 2021, this program has compensated employees for referring new hires during UPS's peak season so long as the referred employees maintained their employment for a specified period of time. The Ruggeres received some referral payments but contend that, given the number of referrals they made, UPS has not sufficiently compensated them. They assert claims for failure to pay wages under the Massachusetts Wage Act, M.G.L. c. 149, § 148 *et seq.*, breach of contract, and unjust enrichment. Pending before the Court is UPS's motion to dismiss for failure to state a claim. For the reasons that follow, that motion will be granted in part and denied in part. The Ruggeres have failed to state a viable Wage Act claim but plausibly allege a claim for breach of

---

[1] To avoid confusion, this Memorandum and Order will refer to Kelli Ruggere as "Kelli" and Todd Ruggere as "Todd."

contract. And since UPS concedes the existence of a contract, the unjust enrichment claim will be dismissed.

## BACKGROUND

The following facts, recounted based on the allegations in the second amended complaint and documents attached to or sufficiently referenced therein, are assumed true for purposes of the motion to dismiss. *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 81 (1st Cir. 2025).

Todd and Kelli Ruggere are former employees of UPS, which operates delivery centers and shipping depots in Massachusetts and elsewhere. ECF 20, ¶¶ 1, 11. Todd was employed by UPS from August 2015 until January 15, 2022 and worked as a delivery driver in the Boston area. *Id.* ¶¶ 5, 12. Kelli worked for UPS as a package handler in Norwood, Massachusetts between September 15, 2022 and January 15, 2023. *Id.* ¶¶ 4, 13.

In November 2021, UPS started offering an incentive-based bonus program (the "Referral Program") that paid Massachusetts employees for each person they successfully referred to UPS for hiring and employment during the peak season, subject to certain conditions. *Id.* ¶¶ 1, 14-18. The Program Guidelines—which are incorporated by reference into the second amended complaint, *see id.* ¶¶ 18-19—provide that, to receive the incentive payout, referrals must, among other requirements, "resul[t] in a hire . . . who remain[s] active" for thirty, sixty, or ninety days, or until a pre-specified date, depending on the program. ECF 25, at 4-5; ECF 25-2, at 2; ECF 25-3, at 2-4. UPS did not limit the number of referral incentive payments an employee could receive. ECF 20, ¶ 19. The Referral Program continued during UPS's 2022 and 2023 peak seasons. *Id.* ¶ 16. Depending on the category of employment and location, the incentive offered by UPS ranged from $200 to $1,000 for each successful referral. *Id.* ¶¶ 15, 17, 24; ECF 25-2, at 2; ECF 25-3, at 2-4.

As active participants in the Referral Program, Todd earned $45,500 and Kelli earned $197,000 from referring approximately 1,400 and 7,402 individuals, respectively, to apply for jobs with UPS. ECF 20, ¶¶ 26-27, 35-36. UPS has not told Todd or Kelli how many of those referred individuals accepted employment at UPS or how much they received in connection with each successful referral. *Id.* ¶¶ 28, 37. Todd and Kelli allege that, given the delta between the number of referred individuals and their expected associated compensation, UPS did not compensate them in full for the referrals they made pursuant to the Referral Program. *Id.* ¶¶ 29, 38. After their employment at UPS concluded, Todd and Kelli also became aware of other UPS employees who were similarly not fully compensated. *Id.* ¶¶ 30, 39.

Invoking this Court's diversity jurisdiction, the Ruggeres brought this lawsuit in April 2025 and filed an amended complaint that same month, followed by a second amended complaint in June 2025. ECF 1, 4, 20. The operative complaint asserts three claims. Count I alleges that UPS failed to pay wages at the agreed-upon rate for the Referral Program in violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148 *et seq.* ECF 20, ¶¶ 65-72. Kelli asserts this claim on behalf of herself and other UPS employees who, in the past three years, were similarly not compensated adequately under the Referral Program Guidelines. *Id.* ¶¶ 49-50. Count II alleges a breach of contract claim for UPS's failure to pay full referral bonuses in accordance with the Program Guidelines. *Id.* ¶¶ 73-80. Count III claims that UPS was unjustly enriched by receiving the benefit of successful referrals under Referral Program without properly paying the referring employees. *Id.* ¶¶ 81-87. The Ruggeres bring the latter two claims on behalf of themselves and other UPS employees who, over the past six years, were similarly not compensated properly pursuant to the Referral Program Guidelines. *Id.* ¶¶ 57-58.

UPS filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF 24. After receiving the Ruggeres' opposition brief, ECF 26, and UPS's reply, ECF 29, the Court held a hearing and took the matter under advisement, ECF 43.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

### I.      Wage Act Claim.

Kelli asserts in Count I that UPS violated the Massachusetts Wage Act, M.G.L. c. 149, § 148 *et seq.*, by "fail[ing] to make full payment of all non-discretionary bonuses earned by [her] . . . under the Referral Program." ECF 20, ¶ 71. The Act provides, in relevant part, that employers "shall pay weekly or bi-weekly each such employee the wages earned." M.G.L. c. 149, § 148. Although the Act does not expressly define "wages," its requirement that wages be paid weekly or biweekly gives "some indication that 'wages' are akin to ordinary payment from an employer to an employee in exchange for labor or services." *Nunez v. Syncsort Inc.*, 496 Mass. 706, 710 (2025); *see id.* at 713 (Budd, C.J., concurring) ("[T]he act applies to ordinary pay compensating an

employee for his or her typical work."). In addition, the Act states that "[t]he word 'wages' shall include" agreed-upon holiday or vacation payments as well as commissions that have been "definitely determined" and have become "due and payable" to the employee. M.G.L. c. 149, § 148.

Construing the statutory language, the Supreme Judicial Court ("SJC") has generally "declined to expand the meaning of 'wages' under the act to other types of compensation not expressly mentioned in the statute." *Tze-Kit Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 712 (2018); *see, e.g.*, *Calixto v. Coughlin*, 481 Mass. 157, 162 (2018) (back pay is not a form of "wages" under the Act); *Mui*, 478 Mass. at 713 (same for accrued but unused sick time); *Weems v. Citigroup Inc.*, 453 Mass. 147, 153-56 (2009) (same for employee stock option plans and discretionary bonuses); *Bos. Police Patrolmen's Ass'n v. City of Bos.*, 435 Mass. 718, 720-21 (2002) (same for employee contributions to deferred compensation plans). Noting that commissions are the only form of contingent compensation specified in the Act, the SJC has "rejected attempts to include other forms of contingent compensation within the meaning of 'wages' where the contingency at issue imposed some requirement beyond the services or labor an employee provides in exchange for his or her compensation." *Nunez*, 496 Mass. at 710. For example, in *Nunez v. Syncsort Incorporated*, decided last year, the SJC held that retention bonus payments "contingent upon continued employment to a particular date and [paid] in addition to the compensation that the employee receive[d] in exchange for his or her labor and services" were not "wages" under the Act. *Id.* at 712-13; *accord Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 47-48 (1st Cir. 2013).

Applying this precedent, the referral bonus payments at issue are not "wages" under the Act. The Referral Program Guidelines specify that payments will only be issued once the referred

candidate is (1) hired and (2) remains employed by UPS through the eligibility date applicable to the type of employment. ECF 25-2, at 2; ECF 25-3, at 2-4. These contingencies are "beyond the services or labor [Kelli] provide[d]" UPS in exchange for her compensation, in part because the contingencies depended on the actions of third parties. *Nunez*, 496 Mass. at 710. For Kelli to receive the referral payment, UPS had to hire the person she referred, and the referred person had to remain employed by UPS past the eligibility date specified in the Program Guidelines. Further, the incentive bonuses were paid in addition to the compensation that Kelli received at her base pay rate for "the labor, service, or performance required of h[er]." *Calixto*, 481 Mass. at 160 (quotation marks omitted). Kelli does not allege that she was hired to recruit new employees; rather, she alleges that she was hired to work "as a package handler . . . to perform package loading services." ECF 20, ¶ 13. Accordingly, any incentive bonus Kelli received for referring a new hire would be paid in addition to the "ordinary payment[s]" she received for completing the package loading services that she was hired to perform. *Nunez*, 496 Mass. at 710.

Kelli counters that the bonuses should be considered "wages" under the Act because the payments compensate her for work that she actually performed in recruiting new UPS employees. This argument is unpersuasive. As Chief Justice Budd explained in her concurrence in *Nunez*, with the exception of the other forms of payment expressly identified in the Act, the Wage Act "applies to ordinary pay compensating an employee for his or her typical work." 496 Mass. at 713 (Budd, C.J., concurring). This means that "compensation provided in exchange for something *other than* the typical work that an employee performs as part of his or her job is *not* a wage under the act." *Id.* In *Nunez*, the retention bonus payments were not "wages" under the Act because they "were 'in addition to the plaintiff's salary' rather than a component of the salary itself," and their function was "something other than typical compensation for typical work." *Id.* at 715 (emphasis omitted).

Here, too, the referral bonuses do not compensate Kelli for completing the ordinary duties associated with her job as a package handler. Rather, the incentive payments were contingent compensation paid in addition to Kelli's base pay. Accordingly, these payments were not made "in exchange for the . . . labor or services" Kelli was hired to perform, but instead constituted "additional contingent compensation outside the scope of the Wage Act." *Nunez*, 496 Mass. at 713.

Kelli also contends that the referral bonuses are akin to "due and payable" "commissions" under the Act. M.G.L. c. 149, § 148. But "commissions" are "compensation owed to those in the business of selling goods, services, or real estate, set typically as a percentage of the sales price." *Nunez*, 496 Mass. at 711 n.6 (quotation marks omitted); *see Parker v. EnerNOC, Inc.*, 484 Mass. 128, 135 n.11 (2020) (defining commission "as a type of payment made based on a percentage of a sale"). These bonuses are not based on any sale. *See Suominen v. Goodman Indus. Equities Mgmt. Grp., LLC*, 78 Mass. App. Ct. 723, 738 (2011) (affirming dismissal of Wage Act claim because the "profit-sharing arrangement" at issue "was of a different sort" and thus "not a 'commission' covered by the statute"). Instead, employees like Kelli and Todd received compensation for referring qualified candidates to UPS. Because UPS's incentive payments under the Referral Program Guidelines are not "wages" pursuant to the Wage Act, Count I is dismissed.

## II.    **Breach of Contract Claim.**

The Ruggeres assert in Count II that UPS breached its contract with them by failing to pay full referral bonuses in accordance with the Referral Program Guidelines. To state a claim for breach of contract, the Ruggeres must allege (1) the existence of an agreement between them and UPS, supported by consideration; (2) that they were "ready, willing, and able to perform" their contractual obligations; (3) that UPS nevertheless breached the contract; and (4) that the breach harmed them. *477 Harrison Ave., LLC v. JACE Bos., LLC*, 483 Mass. 514, 523 (2019). According

to the second amended complaint, UPS agreed to pay a "fixed sum wage payment upon the fulfillment of the terms and conditions of the UPS Referral Program Guidelines," and the Ruggeres submitted referrals to UPS in accordance with those terms. ECF 20, ¶¶ 74-77. UPS allegedly failed to make full payments to the Ruggeres for referrals made under the terms and conditions of its Referral Program in 2021, 2022, and 2023. *Id.* ¶¶ 29, 38, 78. And the Ruggeres allegedly suffered "damages in the form of lost wages" or compensation. *Id.* ¶ 79.

UPS does not dispute the first two elements of a breach of contract claim—namely, that the Referral Program Guidelines constituted a contract and the Ruggeres were ready, willing, and able to perform under that agreement. Instead, UPS argues that the operative complaint fails to plausibly allege any breach or resulting damages. In its view, the Ruggeres "do not allege anywhere that UPS failed to make a single payment to them in connection with a referred individual who actually met the employment tenure requirements set forth under the Referral Program." ECF 25, at 11. At the pleading stage, however, plaintiffs are afforded "some latitude" where, as here, "a material part of the information needed is likely to be within the defendant's control." *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013) (quotation marks omitted). The Ruggeres allege that UPS failed to provide them with a written "statement of how many individuals [they] referred . . . [were] accepted for employment" and "the amount [they] received in compensation for each" successful referral. ECF 20, ¶¶ 28, 37. Such information about who was referred through the Referral Program, whether those individuals met UPS's retention criteria for the payment of referral bonuses, and how much the Ruggeres received for each qualified candidate is in UPS's possession and control. The Ruggeres cannot, as UPS argued at the motion hearing, simply contact some percentage of the thousands of referred individuals to ascertain whether they were paid for each qualified referral. Given the complexities of the Referral Program Guidelines,

it would be difficult, if not impossible, for the Ruggeres to determine this information on their own.

The second amended complaint alleges that Kelli referred 7,402 individuals and received compensation of "$41.90 per individual referred, far short of the $500 or $1,000 per successful referral promised by [UPS]." *Id.* ¶ 36. It similarly alleges that Todd referred 1,400 individuals but was only compensated "$32.50 per referral." *Id.* ¶ 27. While some of those referrals may not have warranted compensation under the Referral Program Guidelines, "'discovery can reasonably be expected to fill [those] holes.'" *Douglas v. Hirshon*, 63 F.4th 49, 59-60 (1st Cir. 2023) (quoting *García-Catalán*, 734 F.3d at 104). At this stage, the difference between the number of referred individuals and associated compensation is sufficient to support the inference that Todd and Kelli were not properly compensated for all their qualified referrals. ECF 20, ¶¶ 29, 38. Taken together, these collective allegations plausibly allege that UPS breached the Program Guidelines and the Ruggeres suffered harm as a result. The Ruggeres have therefore stated a claim for breach of contract.

## III.   <u>Unjust Enrichment Claim.</u>

The Ruggeres assert in Count III that UPS has been unjustly enriched by receiving the benefits of their referrals without due compensation. "Unjust enrichment is the 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Columbia Place Assocs. v. Ne. Univ.*, 493 Mass. 570, 588-89 (2024) (quoting *Sacks v. Dissinger*, 488 Mass. 780, 789 (2021)). A claim for unjust enrichment "will not lie 'where there is a valid contract that defines the obligations of the parties.'" *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 641 (2013) (quoting *Boston Med. Ctr. Corp. v. Sec'y of Exec. Off. of Health & Hum. Servs.*, 463 Mass. 447, 467 (2012)); *see* Restatement (Third) of Restitution and Unjust Enrichment

§ 2(2) (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment").

At the motion hearing and in its brief, UPS conceded that "the Referral Program Guidelines govern [this] dispute," including "the parties' rights and obligations." ECF 25, at 2, 12. Because there is no dispute that a valid contract between the parties exists, the unjust enrichment claim must be dismissed. *See Chang v. Winklevoss*, 95 Mass. App. Ct. 202, 211 (2019) (finding error where the trial court dismissed an unjust enrichment claim without resolving the factual question of whether a valid contract existed); *Malden Police Patrolman's Ass'n v. Malden*, 92 Mass. App. Ct. 53, 60 (2017) (affirming dismissal of unjust enrichment claim where a contract "govern[ed] the terms of paid details performed by the officers"). This claim cannot proceed even as an alternative theory of recovery, which the Ruggeres advance, because it is undisputed that the Referral Program Guidelines define the obligations of UPS and the Ruggeres. *See Zelby Holdings, Inc. v. Videogenix, Inc.*, 92 Mass. App. Ct. 86, 92-93 (2017) (reversing dismissal of unjust enrichment claim that "presuppose[d] the existence of a valid underlying contract" where it was pled as an "alternative bas[i]s for relief"). Where, as here, there is no doubt that a breach of contract claim is available as a legal remedy for the plaintiffs, an alternatively pled unjust enrichment claim must be dismissed. *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82, 84 (1st Cir. 2020).

## CONCLUSION AND ORDER

For the foregoing reasons, UPS's motion to dismiss, ECF 24, is GRANTED as to Counts I and III and DENIED as to Count II.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: March 18, 2026                          UNITED STATES DISTRICT JUDGE

10